**KAPLAN FOX & KILSHEIMER LLP**
William J. Pinilis
160 Morris Street
Morristown, NJ 07960
Telephone: 973-656-0222
Email: *wpinilis@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss
850 Third Avenue
New York, NY  10022
Telephone: 212-687-1980
Email:  *jstrauss@kaplanfox.com*

[*Additional Counsel Appear on Signature Page*]

*Attorneys for Plaintiff Steven Owen*
*and the Proposed Class*

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN OWEN, individually, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>NESTLE HEALTHCARE NUTRITION, INC.,<br><br>             Defendant. | Civil No. 3:22-cv-02855-ZNQ-DEA<br><br><u>Class Action</u><br>Honorable Zahid N. Quraishi<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**Motion Date:  December 5, 2022**<br>Oral Argument Requested |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................1

II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS ...........................3

III.   ARGUMENT.............................................................................9

    A.    Legal Standard...................................................................9

    B.    Plaintiff Has Pleaded A Reasonable Consumer Could Be
        Deceived By Defendant's Product Claims...........................11

        1.    Defendant Misapplies The Reasonable Consumer
              Standard Under New Jersey Law................................11

        2.    The Context Of The False And Misleading Advertising
              Support's Plaintiff's Claims......................................13

        3.    Plaintiff Was Understandably Misled By Defendant's
              False Representations................................................15

    C.    Plaintiff Owen Has Demonstrated Standing ........................20

        1.    Plaintiff Owen Has Pleaded An Ascertainable Loss That
              Establishes Injury...................................................20

        2.    Plaintiff Owen Has Standing To Pursue Claims
              Regarding All of the Similarly Labeled Products....................24

    D.    Plaintiff States A Claim For Breach of Warranty ..............26

        1.    The Products Are Unmerchantable Because They Do Not
              Control Glucose .....................................................26

        2.    Plaintiff Has Satisfied The Notice Requirements for
              Breach of Warranty Claims .........................................28

    E.    Plaintiff Has Pleaded A Claim For Unjust Enrichment ..............31

    F.    Equitable Relief Is Appropriate...........................................33

    G.    Leave To Amend Should Be Freely Given ........................35

IV.   CONCLUSION.........................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ...................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 9, 10

*Avram v. Samsung Elecs. Am., Inc.*,
   No. CIV. 2:11-6973 KM, 2013 WL 3654090 (D.N.J. July 11, 2013).......... 26, 27

*Bedi v. BMW of N.A., LLC*,
   CV 15-1898, 2016 WL 324950 (D.N.J. Jan. 27, 2016) ........................................24

*Block v. Seneca Mortg. Servicing*,
   221 F. Supp. 3d 559 (D.N.J. 2016). ...................................................................21

*Burke v. Weight Watchers Intern., Inc.*,
   983 F. Supp. 2d 478 (D.N.J. 2013) .....................................................................26

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
   516 F. Supp. 3d 370 (S.D.N.Y. 2021).................................................................19

*CDK Glob., LLC v. Tulley Auto. Grp., Inc.*,
   489 F. Supp. 3d 282 (D.N.J. 2020), *reconsideration denied*, No. CV 15-3103
   (KM)(JBC), 2021 WL 1187123 (D.N.J. Mar. 30, 2021) ............................. 16, 21

*Chernus v. Logitech, Inc.*,
   CV 17-673(FLW), 2018 WL 1981481 (D.N.J. Apr. 27, 2018)..........................24

*Chung v. Igloo Prods. Corp.*,
   No. 20-CV-4926 (MKB), 2022 WL 2657350 (E.D.N.Y. July 8, 2022)..............30

*Cipollone v. Liggett Group, Inc.*,
   683 F. Supp. 1487 (D.N.J. 1988) .......................................................................31

*Cooper v. Samsung Elecs. Am., Inc.*,
   374 F. App'x 250 (3d Cir. 2010) ........................................................................31

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2 (1994)................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

*Coyle v. Hornell Brewing Co.*,
   No. 08-02797 (JBS), 2010 WL 2539386 (D.N.J. June 15, 2010) ......................31

*Cudjoe v. Ventures Trust 2013 I-H-R By MCM Capital Partners, LLP, et. al.*,
   No. 18-10158, 2019 WL 3852700 (D.N.J. Aug. 16, 2019 ..................................16

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)..............................................................................34

*Devane v. Church & Dwight Co.*,
   No. 3:19-cv-09899-BRM-LHG, 2020 WL 998946 (D.N.J. Feb. 28, 2020)........29

*Eberhart v. LG Elecs. USA, Inc.*,
   No. CV 15-1761, 2015 WL 9581752 (D.N.J. Dec. 30, 2015)............................15

*Estrella-Rosales v. Taco Bell Corp.*,
   2020 WL 1685617 (D.N.J. Apr. 7, 2020) ...........................................................18

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
   528 U.S. 167 (2000) ............................................................................................33

*Garten v. Intamin Amusement Rides Int. Corp. Est,*
   No. CV1920040FLWZNQ, 2020 WL 13156300 (D.N.J. Sept. 1, 2020)............35

*Greek v. Diet Works, LLC*,
   Civil Action No. 17-4738, 2018 WL 1905803 (D.N.J. Apr. 23, 2018)..............36

*Gremo v. Bayer Corp.*,
   469 F. Supp. 3d 240 (D.N.J. 2020) .....................................................................31

*Gubala v. CVS Pharm., Inc.*,
   No. 14-9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) ...............................12

*Haas v. Pittsburgh Nat. Bank*,
   526 F.2d 1083 (3d Cir. 1975)....................................................................... 25, 26

*Hammer v. Vital Pharm., Inc.*,
   CIV.A. 11-4124, 2012 WL 1018842 (D.N.J. Mar. 26, 2012) ............................24

*Harnish v. Widener Univ. Sch. of L.*,
   931 F. Supp. 2d 641647 (D.N.J. 2013) ...............................................................10

## TABLE OF AUTHORITIES

**Page(s)**

*Hickman v. Subaru of Am., Inc.*,
No. 1:21-cv-02100-NLH-AMD, 2022 WL 11021043 (D.N.J. Oct. 19, 2022)....30

*Horti v. Nestle Healthcare Nutrition, Inc.*,
No. 21-cv-09812-PJH, 2022 WL 2441560 (N.D. Cal. July 5, 2022) .......... passim

*Iliadis v. Wal-Mart Stores, Inc.*,
191 N.J. 88, 922 A.2d 710 (2007).......................................................................32

*In re Caterpillar, Inc. C13 & C15 Engine Prod. Liab. Litig.*,
No. 1:14–cv–3722 (JBS–JS), MDL No. 2540, 2015 WL 4591236 (D.N.J. July
29, 2015) ...........................................................................................................31

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
Civ. No. 03-4558, 2008 WL 4126264 (D.N.J. Sept. 2, 2008) .............................32

*In re Gerber Probiotic Sales Pracs. Litig.*,
2014 WL 1310038 (D.N.J. Mar. 31, 2014).........................................................27

*In re Gerber Probiotic Sales Pracs. Litig.*,
No. CIV.A. 12-835 JLL, 2013 WL 4517994 (D.N.J. Aug. 23, 2013)................12

*In re Gerber Probiotic Sales Practices Litig.*,
CIV.A. 12-835 JLL, 2014 WL 5092920 (D.N.J. Oct. 10, 2014)........................25

*In re Johnson & Johnson Talcum Powder Products Mktg., Sales Practices and
Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018)...............................................................................23

*In re L'Oreal Wrinkle Cream Mktg. and Sales Practices Litig.*,
CIV. 2:12-03571 WJM, 2013 WL 6450701 (D.N.J. Dec. 9, 2013) ...................25

*In re Mercedes-Benz Tele Aid Contract Litig.*,
267 F.R.D. 113 (D.N.J. 2010), *opinion modified on reconsideration,* CIV. 07-
2720 DRD, 2010 WL 2976496 (D.N.J. July 22, 2010) .......................................21

*In re Subaru Battery Drain Prods. Liab. Litig.*,
Civ. No. 20-3095, 2021 WL 1207791 (D.N.J. Mar. 31, 2021) ..........................29

*In re Volkswagen*,
No. 16-2765 (JLL), 2017 WL 1902160 (D.N.J. May 8, 2017) ..........................29

# TABLE OF AUTHORITIES

**Page(s)**

*Kancor Americas, Inc. v. Atc Ingredients, Inc.*,
No. 14-4107, 2015 WL 1530740 (D.N.J. Apr. 6, 2015).......................................32

*Kurtz v. Kimberly-Clark Corp.*,
321 F.R.D. 482 (E.D.N.Y. 2017) ..........................................................................34

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
865 F. Supp. 2d 529 (D.N.J. 2011) .......................................................................28

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018).................................................................................19

*Marcus v. BMW of N.A., LLC*,
687 F.3d 583 (3d Cir. 2012).................................................................................25

*Mason v. Coca-Cola Co.,*
774 F. Supp. 2d 699 (D.N.J. 2011) ............................................................... 17, 18

*McNair v. Synapse Grp., Inc.*,
672 F.3d 213 (3d Cir. 2012).................................................................................35

*Merkin v. Honda N. Am., Inc.*,
No. 17-cv-03625 (PGS)(DEA), 2017 WL 5309623 (D.N.J. Nov. 13, 2017).......30

*Miller v. Am. Fam. Publishers*,
284 N.J. Super. 67, 663 A.2d 643 (Ch. Div. 1995) ..................................... 15, 18

*Montich v. Miele USA, Inc.*,
849 F. Supp. 2d 439 (D.N.J. 2012) ............................................................... 27, 28

*Nacarino v. Chobani, LLC*,
No. 20-cv-07437-EMC, 2022 WL 344966 (N.D. Cal. Feb. 4, 2022).................34

*Palmieri v. Intervet Inc.*,
Civil Action No. 19-cv-22024, 2021 WL 2205854 (D.N.J. June 1, 2021) .........36

*Phillips v. Cnty. Of Allegheny*,
515 F.3d 224 (3d Cir. 2008).................................................................................10

*Pierre v. Healthy Beverage, LLC*,
No. CV 20-4934, 2022 WL 596097 (E.D. Pa. Feb. 28, 2022) ..................... 12, 19

# TABLE OF AUTHORITIES

**Page(s)**

*Powell v. Subaru of Am., Inc.,*
  *502 F. Supp. 3d 856 (D.N.J. Nov. 24, 2020)* ........................................................29

*Rudel Corp. v. Heartland Payment Sys.,*
  No. 16-2229, 2016 WL 4472944 (D.N.J. Aug. 23, 2016) ...................................32

*Scattaglia v. Mercedes-Benz USA, LLC,*
  No. 2:21-cv-12750 (BRM) (LDW), 2021 WL 5918475 (D.N.J. Dec. 15, 2021)31

*Simonson v. Hertz Corp.,*
  No. CIV.A. 1:10-CV-1585, 2011 WL 1205584 (D.N.J. Mar. 28, 2011) ...........32

*Skeen v. BMW of N. Am., LLC,*
  No. 2:13-CV-1531-WHW-CLW, 2014 WL 283628 (D.N.J. Jan. 24, 2014) ......11

*Smajlaj v. Campbell Soup Co.,*
  782 F. Supp. 2d 84 (D.N.J. 2011) ................................................................. passim

*Stewart v. Smart Balance, Inc.,*
  CIV.A. 11-6174 JLL, 2012 WL 4168584 (D.N.J. June 26, 2012) .....................26

*Strzakowlski v. Gen. Motors Corp.,*
  No. CIV.A. 04-4740, 2005 WL 2001912 (D.N.J. Aug. 16, 2005) .....................30

*Taylor v. JVC Ams. Corp.,*
  No. 07-4059 (FSH), 2008 WL 2242451 (D.N.J. May 30, 2008)........................30

*Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005)...................22

*Union Ink Co. v. AT & T Corp.,*
  352 N.J. Super. 617, 801 A.2d 361 (App. Div. 2002) ................................. 12, 19

*Vagias v. Woodment Properties, et al.,*
  384 N.J. Super. 129, 894 A.2d 68 (App. Div. 2006) ..........................................16

**Statutes**

U.S. Constitution
  Article III.................................................................................................. 23, 34

# TABLE OF AUTHORITIES

**Page(s)**

21 U.S.C.
  ch. 9, § 301, *et seq.* (the "Food, Drug, and Cosmetic Act" [FDCA]) ... 3, 7, 13, 35

N.J. Stat. Ann.
  § 12A:2–314(f) ...................................................................26
  § 12A:2-607(3)(a) ...............................................................28
  §§ 56:8-2, *et seq.* (the "New Jersey Consumer Fraud Act" [NJCFA]) ........ passim

## Rules

Federal Rules of Civil Procedure
  Rule 8(a)(2) .......................................................................10
  Rule 8(d)(2) .......................................................................33
  Rule 9(b) ..........................................................................10
  Rule 12(b)(6) ......................................................................9
  Rule 15(a) .........................................................................35

## I.    INTRODUCTION

Plaintiff Steven Owen ("Plaintiff") filed this consumer protection class action because Defendant Nestle HealthCare Nutrition, Inc. ("Defendant" or "Nestle") has been marketing and selling BOOST-brand Glucose Control (the "Product(s)") claiming they are specifically "designed for people with diabetes" to "help manage blood sugar."  ECF No. 1 (Complaint or "Compl." ¶ 1).  Despite touting these purported health benefits, the Products do not in fact control glucose at all, as evidenced by Defendant's own purported clinical trials.  *Id.* ¶ 3.  Defendant's false and misleading labels also make improper health claims and run afoul of regulatory laws and constitute consumer deception under New Jersey law.  *Id.* ¶¶ 18-22.  Defendant's decision to target consumers mindful of their blood sugar with its misleading claims is nothing less than sheer exploitation of its consumers' health and disease related concerns to sell more of the Products in a deceptive fashion.

The Court should deny Defendant's Motion to Dismiss, ECF No. 29 ("Motion") because it is predicated on a purposeful distortion of Plaintiff's theory of liability and misapprehends New Jersey law.  Defendant's primary argument is that consumers could not plausibly be deceived into believing that the Products could actually treat or prevent diabetes.  Plaintiff Owen, however, makes no such claim and has alleged that the Products simply do not actually control or help manage

blood sugar as advertised, regardless of whether a consumer has diabetes or is pre-diabetic.

In support of its motion, Defendant relies heavily on the decision it obtained in a similar case filed against it in the Northern District of California.[1]  That ruling has no bearing here.  Not only was it decided under California and New York law, but, unlike here, the plaintiffs in that case alleged that the Products' labeling could actually trick consumers into believing that the Products could, in fact, "prevent" and/or "treat" diabetes—a theory the Court found was implausible.  And, the New Jersey Consumer Fraud Act ("NJCFA") requires only that a statement have the capacity to mislead.  Indeed, the law in New Jersey is clear that a consumer need not have actually been misled for a violation to have occurred.  As Plaintiffs in this case allege, the product claims made by Defendant are not factually accurate—under New Jersey law that is enough and constitutes an issue to be determined by a trier of fact on a complete record.

The balance of Defendant's arguments can also be rejected.  Plaintiff paid $38.99 for the deceptively labeled Products, demonstrating his ascertainable loss and thereby establishing his standing to seek redress before this Court under New Jersey law.  Plaintiff has also adequately alleged that the Products do not perform as

---

[1] *See Horti v. Nestle Healthcare Nutrition, Inc.,* Case No. 21-cv-09812-PJH, 2022 WL 2441560 (N.D. Cal. July 5, 2022) ("*Horti*").

intended, thereby breaching New Jersey warranty laws that can be challenged in court without pre-suit notice. Injunctive relief is also specifically available under New Jersey law, and especially warranted here because Defendant continues to make unapproved health related claims that go well beyond those of typical nutritional supplements. Absent Court intervention, Defendant will continue to deceive consumers. For these and the other reasons set forth herein, Plaintiff requests that the Court deny Defendant's Motion in its entirety.

## II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS

Defendant's BOOST Glucose Control Products state that they "control glucose" and "HELP[] MANAGE BLOOD SUGAR." Compl. ¶ 5. As alleged, "[t]he Product name itself, Glucose Control, reaffirms its claimed purpose – to control glucose." *Id.* ¶ 1. Moreover, the Products do not "control glucose" or "help manage blood sugar," as further evidenced by Defendant's own clinical trial. Compl. ¶¶ 3, 5, 6, 8-10, 24-33. "Plaintiff and class members bought the Products because they believed that they were scientifically proven to keep their blood glucose levels in control, the opposite of what Nestle's own testing shows." Compl. ¶ 33. Simply put, Plaintiff's claims are based on the premise that the Products fail to perform as labeled, marketed, and advertised.

Plaintiff also alleges that Defendant makes unapproved health claims under Federal Food, Drug, and Cosmetic Act ("FDCA") regulations, further demonstrating

consumer deception under New Jersey law.  Compl. ¶¶ 18-23.  Accordingly, when "[v]iewed in their totality, consumers could understand Defendant's representations, as outlined above and below, to mean that they can use the Products to effectively control glucose levels and manage blood sugar[]" and are thus impermissible health claims.  *Id.* ¶ 22.  Notably, Defendant fails to address any of Plaintiff's allegations related to the clinical trial or unapproved health claims.  This is a critical omission as the unapproved health claims bolster Plaintiff's claims that Defendant is engaging in deceptive marketing and sales practices under New Jersey law.

Throughout its Motion, Defendant incorrectly recasts Plaintiff's allegations to suit its arguments.  To be clear, Plaintiff is *not* claiming (and has not alleged) that the Products are a substitute for medication or that they can "prevent" and/or "treat" diabetes.  In fact, the term "treat" is only mentioned *twice* in Plaintiff's 26-page Complaint in general terms, ¶¶ 3, 19, yet appears no less than *16 times* in Defendant's 18-page Motion.  Rather, Plaintiff simply alleges that Defendant makes affirmative misrepresentations about the Products to exploit consumers' blood sugar concerns and make false promises.  Defendant's attempts to distract the Court from the ***actual*** allegations in the Complaint here are illustrated below:[2]

_____

[2] As illustrated, none of the paragraphs of Plaintiff Owen's Complaint referenced by Defendant in their brief allege that Plaintiff Owen or Class Members believed that the Products could actually "prevent" or "treat" diabetes.

| Defendant's Contrived Assertions | Plaintiff's Actual Allegations |
|---|---|
| "Plaintiff Owen's complaint boils down to the assertion that reasonable consumers would expect Nestlé's BOOST Glucose Control nutritional drinks to 'prevent, treat, and mitigate the effects of diabetes.'" Mot. at 1 (citing Compl. ¶ 3). | "Due to the severity and prevalence of diabetes, companies like Nestle have capitalized on consumers' desire to prevent, treat, and mitigate the effects of diabetes…Defendant's representations are reasonably understood by consumers to mean that the Products will control and manage blood glucose levels. However, Defendant's own clinical trial concluded that the Products were associated with merely a lesser rise in glucose levels as compared to one other unidentified nutritional drink. Shockingly, the Products do not control glucose at all, but rather only produce a slightly favorable response to glucose levels as compared to one other unidentified product." Compl. ¶ 3. |
| "The BOOST drinks are what the labels say they are: nutritional drinks containing protein, essential vitamins, and minerals, with less sugar than standard nutritional drinks." Mot. at 1. | "The BOOST drinks are sold as "nutritional drinks" specifically "designed for people with diabetes" to "help manage blood sugar." The Product name itself, Glucose Control, reaffirms its claimed purpose – to control glucose." Compl. ¶ 1. |
| "Because Owen has not alleged any plausible basis for his core theory that Nestlé deceived him into believing that the BOOST drinks would 'prevent' or 'treat' diabetes by actively 'managing' his blood glucose, his claims should be dismissed." Mot. at 1-2. | "The Products are each labeled 'Glucose Control' and prominently state in bold, capital font that they 'HELP MANAGE BLOOD SUGAR' and/or that they are 'DESIGNED FOR PEOPLE WITH DIABETES.'" Compl. ¶ 5. "Plaintiff believes that the Product did not 'control' his Glucose or 'manage his blood sugar' as he expected it would given the Product's labeling." Compl. ¶ 9. |

| Defendant's Contrived Assertions | Plaintiff's Actual Allegations |
|---|---|
| "Owen's complaint is premised on the idea that consumers would ignore common-sense, disregard the statements about the drinks not being a substitute for medication, and nevertheless conclude that the BOOST drinks can 'prevent[] and control' diabetes." Mot. at 4 (citing Compl. ¶ 4). | "Critically, Nestle's marketing and labeling are tantamount to express and/or implied disease claims relating to the prevention and control of diabetes. Such claims made on dietary supplements are prohibited as a matter of law and further render the claims misleading and deceptive." Compl. ¶ 4. |
| "Owen doesn't claim BOOST drinks physically harmed him. He instead claims that he overpaid for the BOOST drinks because the labels misrepresented that the drinks would prevent or treat diabetes." Mot. at 8 (citing Compl. ¶¶ 8, 10, 60, 67). | "Plaintiff Steven Owen is an individual consumer who, at all times material hereto, was a citizen of New Jersey. Plaintiff, a diagnosed diabetic, purchased a 24-pack of BOOST Glucose Control in or around April 2022 from Amazon for $38.99. In purchasing the Product, Plaintiff relied on Defendant's false, misleading, and deceptive marketing of the Products as a nutritional drink named "Glucose Control," designed to "HELP[] MANAGE BLOOD SUGAR." Had Defendant disclosed that the Product Owen purchased was not able to actually "manage blood sugar" or "control glucose", Plaintiff would not have purchased the Product. Compl. ¶ 8. |
| "Here, Owen likewise alleges that he 'paid more' for the BOOST drinks than he otherwise would have paid, on the theory that the drinks would 'control glucose' and ***treat*** diabetes." (emphasis added) Mot. at 9 (citing Compl. ¶¶ 8, 67). | |
| "Here, Owen claims that the BOOST drinks do not 'control glucose' or ***treat*** diabetes." (emphasis added) Mot. at 14 (citing ¶¶ 66-67). | "Defendant's misrepresentations that the Products provide "Glucose Control," and "HELPS MANAGE BLOOD SUGAR" were immediate causes of Plaintiff's decision to purchase one of the Products. He would not have agreed to purchase one of the Products, would not have paid the full price, or would have sought materially different terms, had he known the truth. Defendant's misrepresentations were substantial factors in Plaintiff's |

- 6 -

| Defendant's Contrived Assertions | Plaintiff's Actual Allegations |
|---|---|
| | decision to Purchase the Product." Compl. ¶ 10.<br><br>"Plaintiff and each of the members of the Classes would not have purchased the Products had they known the Products did not "control glucose", "HELP[] MANAGE BLOOD SUGAR," or were not "DESIGNED FOR PEOPLE WITH DIABETES." Compl. ¶ 60.<br><br>"Defendant's Products do not 'control glucose' or 'MANAGE BLOOD SUGAR,' and do not otherwise help 'PEOPLE WITH DIABETES' and thus render the Products unmerchantable and unfit for sale and use because they do not do what they were intended to do, as described above." Compl. ¶ 66.<br><br>"Defendant was aware of the Products' defects at the time it sold them to Plaintiff and Class and Subclass members. As a result of Defendant's breach of warranties, Class and Subclass members have suffered damages because they have purchased Products they would not have otherwise purchased and/or paid more for Products than they would have otherwise paid. Plaintiff and Class and Subclass members are entitled to receive damages from Defendant in an amount to be determined at trial." Compl. ¶ 67. |

Defendant miscasts Plaintiff's actual allegations here and ignores the false

study and FDCA issues because it obtained dismissal of the *Horti* complaint under

California and New York law doing the same.  Defendant relies on the *Horti* decision for the proposition that Plaintiff's theory of the case is "implausible" and argues that this Court needs to come to the same conclusion as the *Horti* Court.  Mot. at 1.

Even though *Horti* concerns the same Products, it is not determinative here. First, *Horti* was determined under California and New York law, **not** New Jersey law.[3]  *Horti*, 2022 WL 2441560, at *6-7.  Second, the plaintiffs in *Horti* alleged a different theory of liability.  There, "[p]laintiffs allege that the representations on the labels of each of these products mislead and 'trick' reasonable consumers into believing that the products can prevent and treat diabetes."  *Id.* at *1.  This appears to have been one of the reasons the Court in California dismissed the *Horti* complaint.[4]  *Id.* at *7.  Conversely, and as explained above, Plaintiff Owen does not allege this.  Instead, Plaintiff here alleges that "[t]he Products are each labeled 'Glucose Control' and prominently state in bold, capital font that they 'HELP MANAGE BLOOD SUGAR[.]'"  Compl. ¶ 5.  Plaintiff here further alleges that "Defendant's representations are reasonably understood by consumers to mean that

---

[3] The plaintiffs in the *Horti* action only brought claims under California and New York law on behalf of only California and New York residents who purchased the Products.

[4] *See* Second Amended Class Action Complaint filed in *Horti* (N.D. Cal. Dkt. No. 11) at paragraphs 4, 42, 43, 44 and 142, alleging that the Products' labeling could trick reasonable consumers into believing that the Products could "prevent," "treat" and/or even "cure" diabetes.

the Products will control and manage blood glucose levels.  However, Defendant's own clinical trial concluded that the Products were associated with merely a lesser rise in glucose levels as compared to one other unidentified nutritional drink" and thus do not do as the labels promise. *Id.* ¶ 3.  Therefore, Plaintiff's theory of the case is not that the labels mislead consumers into thinking that the Products "prevent and treat" diabetes—it is that the Products do not perform as promised on their label.

As set forth below, when Plaintiff's actual allegations are viewed through the prism of New Jersey law, it is readily apparent that Plaintiff's claims of Defendant's consumer deception are plausible and Defendant's Motion to Dismiss should be denied.

## III.    ARGUMENT

### A.    Legal Standard

A motion to dismiss should be denied if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   On a motion to dismiss pursuant to Rule 12(b)(6), courts are required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether,

under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  The court's analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading that states a claim for relief need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To the extent that Plaintiff's claims sound in fraud or misrepresentation they "must state with particularity the circumstances constituting fraud." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 91 (D.N.J. 2011) (quoting Fed. R. Civ. P. 9(b)).  "The plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject some measure of substantiation into a fraud allegation." *Harnish v. Widener Univ. Sch. of L.,* 931 F. Supp. 2d 641, 647 (D.N.J. 2013) (citations omitted).

Here, Defendant invokes the heightened Rule 9(b) pleading standard, but makes no actual argument nor raises any discussion that Plaintiff's allegations are not precise enough to meet this standard.  Furthermore, not all of Plaintiff's allegations sound in fraud. *See* Section III.(D-E).

### B.   Plaintiff Has Pleaded A Reasonable Consumer Could Be Deceived By Defendant's Product Claims

#### 1.   Defendant Misapplies The Reasonable Consumer Standard Under New Jersey Law

Defendant claims that "[t]o adequately plead each of his statutory and common-law claims, Owen must show that [Nestlé]'s statements on its product are false."  Mot. at 5 (internal quotations and citations omitted).  That is incorrect.  "A private party seeking to recover under the [NJCFA] must demonstrate three things: (1) a defendant's unlawful practice, (2) an ascertainable loss, and (3) a causal connection between the two.  As a general matter, the NJCFA is to be 'liberally construed' to protect consumers, and there is no requirement that consumers actually be deceived."  *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW-CLW, 2014 WL 283628, at *9 (D.N.J. Jan. 24, 2014) (internal citations omitted).  "It is, in short, enough to state unlawful conduct under the NJCFA, that the statement is not factually accurate and was made in the connection or sale of merchandise."  *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 299 (D.N.J. 2009) (citing *Solo v. Bed Bath & Beyond, Inc.,* No. 06–1908(SRC), 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007)).

After misstating the applicable legal standard, Defendant then argues that "[n]o reasonable consumer would see the BOOST drink labels" and think that the Products could "cause blood sugar levels to become static no matter what the person

ate or drank." Mot. at 5. However, what may mislead a consumer is not suitable for determination at the motion to dismiss stage because "[w]hether the advertisements contained material misstatements of fact…presents a question to be determined by the trier of fact." *Union Ink Co. v. AT & T Corp.,* 352 N.J. Super. 617, 645, 801 A.2d 361 (App. Div. 2002); *In re Gerber Probiotic Sales Pracs. Litig.*, No. CIV.A. 12-835 JLL, 2013 WL 4517994, at *9 (D.N.J. Aug. 23, 2013) ("whether a practice is deceptive or misleading is generally a question of fact").

Regardless, a reasonable consumer could see the large, bold, label "Glucose Control" and representation that it "HELPS MANAGE BLOOD SUGAR" and think that the Products control glucose and manage blood sugar. *See, e.g.*, *Smajlaj* 782 F. Supp. 2d at 98 ("reasonable consumers would have understood 'REGULAR CONDENSED SOUP' in the context in which it appears to refer to Campbell's regular tomato soup"); *Pierre v. Healthy Beverage, LLC*, No. CV 20-4934, 2022 WL 596097, at *11 (E.D. Pa. Feb. 28, 2022) ("The tea's lightly sweetened label could deceive reasonable consumers into believing they were buying a beverage with low sugar content."); (*Gubala v. CVS Pharm., Inc.*, No. 14-9039, 2016 WL 1019794, at *12 (N.D. Ill. Mar. 15, 2016) denying dismissal of claims that whey protein powder was deceptively named, as the name suggested the protein comprises "pure whey protein" rather than "whey protein mixed with other non-protein substances").

Defendant relies heavily on *Horti* for the proposition that this interpretation is "implausible," but the Court in *Horti* did not consider the New Jersey Consumer Fraud Act.  Mot. at 5-6.  Furthermore, *Horti* is easily distinguishable because here Plaintiff's claims concern the misrepresentations actually on the Product's name and label—*not* that the Products actually treat or prevent diabetes.

### 2. The Context Of The False And Misleading Advertising Support's Plaintiff's Claims

Defendant is also wrong that "[t]he context in which BOOST drinks are sold reinforces the implausibility of Owen's claims."  Mot. at 5 (citations omitted).  Here, Defendant again mischaracterizes Plaintiff's claims.  *Id.* at 6.  Plaintiff does not allege that the Products are a substitute for medication, but simply that "[t]he Products are sold as 'nutritional drinks' specifically 'designed for people with diabetes' to 'help manage blood sugar.'  The Product name itself, Glucose Control, reaffirms its claimed purpose—to control glucose[]" which Plaintiff alleges that it does not do based on Defendant's own alleged clinical trials—a critical allegation that Defendant entirely ignores.  Compl. ¶¶ 1, 3, 24, 33.

However, Defendant's decision to make health-related claims surrounding blood sugar increases consumer deception.  Defendant, through its use of phrases like "designed for people with diabetes," targets those who may want to manage blood sugar or control glucose.  Defendant's Products, as marketed and labeled, are over the counter "nutritional drinks," and thus must comply with the FDCA and its

labeling regulations.  Compl. ¶ 18.  As Defendant's Products are not U.S. Food and Drug Administration ("FDA") approved drugs, as a matter of law, they may not bear explicit or implied disease claims—claims that either mention a disease (*e.g.*, diabetes) or otherwise refer to identifiable characteristic signs or symptoms of a disease such that the intended use of the product to treat or prevent the disease may be inferred.  *Id.* at ¶ 19.  Moreover, Defendant may not make health claims about the Products unless such claims are expressly reviewed and preauthorized by the FDA. *Id.* at ¶ 20.  A health claim is "any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication . . . characterizes the relationship of any substance to a disease or health-related condition." *Id.* at ¶ 21 (quoting 21 C.F.R. § 101.14(a)(1)(4)).

Viewed in their totality, the Defendant's representations have the capacity to mislead. Defendant's claim that the Products named "Glucose Control" are "DESIGNED FOR PEOPLE WITH DIABETES" and "HELPS MANAGE BLOOD SUGAR" to mean that consumers can use the Products to control glucose levels and manage blood sugar.  In fact, Metformin, a drug *that is often prescribed by a medical doctor* for diabetes, similarly claims that it helps lower blood sugar.  Compl. ¶ 23. Thus, not only do the representations have the capacity to mislead consumers, they also violate FDA regulations. Notably, Defendant does not respond to these allegations in any meaningful detail because they are indicative of consumer

deception and regulatory violations.  Defendant also fails to respond to Plaintiff's allegations that its representation that the Products are "clinically shown to produce a lower blood sugar response" is false.  Compl. ¶¶ 26-33.  When all of Plaintiff's allegations are viewed in context, the totality of Defendant's marketing more than satisfies New Jersey's low standard that it has the "capacity to mislead."

Likewise, Defendant's argument that it disclaims the Products are "[n]ot a substitute for medication" is telling.  Mot. at 6.  Defendant's argument betrays its sensitivity that its deceptive product claims now need clarification, but notably it does not put this purported disclaimer on the product itself, choosing instead to paper over it in Court while misleading consumers in the marketplace.  Furthermore, "defendant's references to its claimed disclaimer…do not constitute defenses to plaintiffs' *prima facie* showing that defendant has violated the [New Jersey] Consumer Protection Act."  *Miller v. Am. Fam. Publishers*, 284 N.J. Super. 67, 87, 663 A.2d 643, 654 (Ch. Div. 1995).

### 3. Plaintiff Was Understandably Misled by Defendant's False Representations

Although the standard is only the "capacity to mislead," Defendant's representations actually did mislead the Plaintiff.  *Eberhart v. LG Elecs. USA, Inc.*, No. CV 15-1761, 2015 WL 9581752, at *4 (D.N.J. Dec. 30, 2015) ("the test is whether an advertisement has the capacity to mislead the average consumer. Even if an advertisement is literally true, it may be actionable if the overall impression [it]

create[s] ... is misleading and deceptive to an ordinary reader.") (citations omitted). Given the totality of the false advertising, it is not unreasonable that Plaintiff and consumers saw the representations and thought that the BOOST Glucose Control Products would do what they promised to do: "Control glucose" and "help[] manage blood sugar." Initially, allegations of affirmative acts constituting a violation of the Consumer Fraud Act do "not require proof of intent to defraud[.]" *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 310 (D.N.J. 2020), *reconsideration denied*, No. CV 15-3103 (KM)(JBC), 2021 WL 1187123 (D.N.J. Mar. 30, 2021); *Vagias v. Woodmont Properties, et al.*, 384 N.J. Super. 129, 133, 894 A.2d 68, 71 (App. Div. 2006). The New Jersey Supreme Court has carefully explained that the reason that intent is not an element of Plaintiff's claim in this case is because:

> [t]he capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice. Intent is not an essential element. Since consumer protection is the ultimate goal, the standards of conduct established by the act . . . must be met regardless of intent except where the Act specifically provides otherwise.

*Id*. (quoting *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977)); *see also Cudjoe v. Ventures Trust 2013 I-H-R By MCM Capital Partners, LLP, et. al.,* Civ.

- 16 -

Action No. 18-10158, 2019 WL 3852700, at *3 (D.N.J. Aug. 16, 2019) (*citing Gennari v. Weichert Co. Realtors,* 691 A.2d 350, 365 (N.J. 1997)) ("But under the NJCFA, '[o]ne who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive.'").

Thus, the NJCFA is not aimed solely at "shifty, fast-talking and deceptive merchant[s]" but reaches "non-soliciting artisans" as well. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 16 (1994) (citing *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 23 (App. Div. 1985)). The NJCFA is designed to protect the public even when a merchant acts in good faith. *Id.* Thus, even if Defendant acted in good faith, Defendant has liability to Plaintiff under the NJCFA.

Defendant's cases are inapposite. First, *Mason v. Coca-Cola Co.,* 774 F. Supp. 2d 699 (D.N.J. 2011) is readily distinguishable. In that case, "plaintiffs simply [made] a broad assumption that defendant intended for Diet Coke Plus's vitamin and mineral content to deceive plaintiffs into thinking that the beverage was 'healthy.'" 774 F. Supp. 2d at 703. The court held that "[w]ithout more specificity as to how defendant made false or deceptive statements to plaintiffs regarding the healthiness or nutritional value of the soda," plaintiffs did not plead a claim under the NJCFA with sufficient particularity. *Id.* Here, Plaintiff has pleaded his NJCFA claim with sufficient particularity, and Defendant has made no argument to the contrary.

Plaintiff alleges that the Products' labeling and name, in addition to how Defendant capitalized on improper health claims as described above, led Plaintiff to believe the Products would do what they promised.  Plaintiff also pleaded that the Products fail to do what they said they would.  Compl. ¶¶ 3, 5, 8-10, 15.

Likewise, *Estrella-Rosales v. Taco Bell Corp.*, 2020 WL 1685617 (D.N.J. Apr. 7, 2020) is not instructive.  In *Taco Bell Corp.*, the court reasoned that the advertised deal of a "$5 Chalupa Cravings Box," which was not offered at all Taco Bell locations, was not misleading because it was specifically disclaimed in the advertisement that it was only available at limited locations.  *Id.* at *1.  The court also reasoned that the advertisement was not misleading because the price was displayed at every point of purchase on the menu itself.  *Id.* at *2-3.  As noted above, a disclaimer does "not constitute defenses to plaintiffs' *prima facie* showing that defendant has violated the Consumer Protection Act."  *Miller*, 284 N.J. Super. at 87, 663 A.2d at 654.  Here, unlike *Taco Bell Corp.*, Defendant's disclaimer was not placed on the product, but only arguably on certain websites.

Defendant also argues that *Mason* and *Taco Bell Corp.* stand for the proposition that "reasonable consumers would review the BOOST drink labels with the basic understanding that any amount of sugar and carbohydrates will affect blood sugar[.]" Mot. at 7.  "Reasonable consumers, however, are not expected to consult the Nutrition Facts panel on the [back] of the [can] to correct misleading information

set forth prominently on the front of it." *Pierre*, 2022 WL 596097, at *11 (internal quotations and citations omitted). Even if the Products' nutrient and sugar labels are literally true, Defendant's labeling may be actionable if "the overall impression [it] create [s] ... is misleading and deceptive to an ordinary reader." *Union Ink Co.*, 352 N.J. Super. at 645, 801 A.2d at 379; *Smajlaj*, 782 F. Supp. 2d at 98–99 ("the fact that the labels were literally true does not mean they cannot be misleading to the average consumer").

Here, and as explained above, the totality of Defendant's representations have the capacity to mislead and cause reasonable consumers to think that the Products will "help manage blood sugar" and "control glucose." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 634 (2d Cir. 2018) (concluding plaintiffs plausibly claimed a reasonable consumer would have been deceived by defendant's "whole grain" labels for Cheez-its, whose "primary grain content" was actually "enriched white flour"); *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 380–88 (S.D.N.Y. 2021). Defendant, in an attempt to distract from the issue at hand, again mischaracterizes Plaintiff's allegations to suit its argument. Mot. at 7. Plaintiff does not allege the BOOST drinks promise that they will "treat diabetes or maintain healthy glucose levels[.]" *Id*. Plaintiff alleges that the Products do not do what the labels say: "control glucose" and "help[] manage blood sugar." Compl. ¶¶ 3, 5, 8-10, 15.

## C.    Plaintiff Owen Has Demonstrated Standing

### 1.    Plaintiff Owen Has Pleaded an Ascertainable Loss That Establishes Injury

Plaintiff Owen has standing to pursue his deceptive marketing and warranty claims under New Jersey law and has pleaded an ascertainable loss because he paid $38.99 for a 24-pack of Boost Glucose Control due to Defendant's deceptive product claims.  As set forth in his Complaint: "In purchasing the Product, Plaintiff relied on Defendant's false, misleading, and deceptive marketing of the Products as a nutritional drink named "Glucose Control," designed to 'HELP[] MANAGE BLOOD SUGAR.'"  Compl. ¶ 8.  "Had Defendant disclosed that the Product Owen purchased was not able to actually "manage blood sugar" or "control glucose", Plaintiff would not have purchased the Product." *Id*.

While Defendant is correct that Plaintiff is not pursuing any personal injury claims, his ascertainable-loss—which he pleaded with requisite specificity—is more than enough to confer standing.  "The New Jersey Supreme Court has repeatedly and explicitly endorsed a benefit-of-the-bargain theory under the Consumer Fraud Act that requires nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised." *Smajlaj*, 782 F. Supp. 2d at 99.  Plaintiffs "need not plead the exact dollar amount of their loss. Instead, plaintiffs must provide enough specificity to

give defendants notice of their possible damages." *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 594 (D.N.J. 2016).

Even setting aside that Plaintiff Owen relied on Defendant's deceptive labeling, such a showing is not even required because Plaintiff Owen's ascertainable loss is demonstrated by the fact that he alleges that he paid for but did not receive a nutritional drink that could actually "manage blood sugar" or "control glucose." Compl. ¶ 8. "The precise nature of the harm at issue in Plaintiffs' consumer fraud claims is the key to assessing whether the various categories cited by [defendant] have standing. Under the NJCFA, Plaintiffs do not need to demonstrate that they actually relied on the company's misrepresentations or omissions . . . Rather, they must show an "ascertainable loss," meaning that they "paid for a product and got something less than what had been promised." *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 160 (D.N.J. 2010), *opinion modified on reconsideration,* CIV. 07-2720 DRD, 2010 WL 2976496 (D.N.J. July 22, 2010) (internal citations omitted); *CDK Glob., LLC*, 489 F. Supp. 3d 282, 311 (the product "it obtained was worth less than the one it bargained for" and thus "could constitute an ascertainable loss sufficient to satisfy the third prong of an NJCFA claim"). Here, Plaintiff purchased the Product marketed to actually "manage blood sugar" and "control glucose" for $38.99 and did not receive that—his loss is therefore sufficiently ascertainable and demonstrates standing.

In the seminal opinion on the issue, the New Jersey Supreme Court clarified that what is needed to demonstrate standing under the NJCFA is "either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005). "The certainty implicit in the concept of an "ascertainable" loss is that it is quantifiable or measurable." *Id*. at 793. *Thiedemann* is regularly applied for standing analysis in New Jersey District Court. "Indeed, according to Defendants, being fraudulently induced into purchasing a product is not even an injury sufficient to confer standing under Article III of the Constitution. . . Defendants are incorrect." *Smajlaj*, 782 F. Supp. 2d at 99. Accordingly, Plaintiffs' allegations that he would not have spent $38.99 on the Products, or that he "would not have paid the full price" are more than sufficient to demonstrate an ascertainable loss. Compl. ¶¶ 8-10.

In order to prop up its argument that Plaintiff allegedly lacks standing, Defendant simply ignores these specific allegations in favor of arguing that Plaintiff is only pursuing a "price premium" theory that was rejected in the *Horti* matter under California and New York law. *See* Mot. at 9.[5] The Court should reject Defendant's

_____

[5] The Defendant blatantly misrepresents the Complaint by claiming that Plaintiff Owen "consumed happily without issue" the Products by citing to paragraphs 8, 10, 60, and 67 that contain no such allegations pertaining to his alleged happiness with the Products. Mot. at 12. Rather, the paragraphs cited repeatedly emphasize Plaintiff

attempt to conflate the allegations and applicable law in the two separate cases.  For the same reasons, Defendant's reliance on a football ticketing case where the plaintiff did *not* even make a purchase is misplaced because here Plaintiff did make a purchase of $38.99 he alleges that he would not have otherwise made. Mot. at 8 (citing *Finkelman v. Natl. Football League*, 810 F.3d 187, 195 (3d Cir. 2016). Similarly, Defendant's reliance on *In re Johnson & Johnson Talcum Powder Products Mktg., Sales Practices and Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018), actually supports Plaintiff's claim.  In that case, the Third Circuit found that no Article III injury was incurred under the NJFCA for the purchases of talcum powder over six decades where the plaintiff "fails to allege that the purchase provided her with an economic benefit worth less than the economic benefit for which she bargained." *Id*. at 290.  Here, Plaintiff Owen has specifically pleaded in that he was injured by the purchase of the Product that claimed to "manage blood sugar" and "control glucose" for $38.99 and he did not receive those alleged benefits.  Compl. ¶ 8.

Defendant's other citations are unavailing as plaintiffs have regularly met their burden to demonstrate ascertainable loss at the pleading stage in the deceptive

---

Owen would not have purchased the Products but for Defendant's deception, and paragraph 9 specifically alleges the Products did not work as Plaintiff expected given the representations on the Product's label.

marketing and sale of consumer goods, including nutritional supplements, under the NJCFA.  *See, e.g., Hammer v. Vital Pharm., Inc.*, CIV.A. 11-4124, 2012 WL 1018842, at *8-9 (D.N.J. Mar. 26, 2012) (alleging ascertainable losses over deceptively marketed nutritional supplements); *Smajlaj*, 782 F. Supp. 2d at 99 (alleging ascertainable losses incurred from mislabeled soup cans); *Chernus v. Logitech, Inc.*, CV 17-673(FLW), 2018 WL 1981481, at *13 (D.N.J. Apr. 27, 2018) (ascertainable losses established from the marketing and sale of defective security systems).   Accordingly, Plaintiff Owen has demonstrated standing and his ascertainable loss.

### 2.    Plaintiff Owen Has Standing to Pursue Claims Regarding All of the Similarly Labeled Products

Plaintiff Owen is alleging his claims as a class representative regarding each of the Products because they all contain the same title—"Boost Glucose Control" and the same marketing claims at issue that they "HELP[] MANAGE BLOOD SUGAR." Compl. ¶ 15-16.  "In this district, a class complaint generally may survive a motion to dismiss on products a lead plaintiff did not purchase, so long as: (1) the basis for each of the claims is the same, (2) the products are closely related, and (3) the defendants are the same."  *Bedi v. BMW of N.A., LLC*, CV 15-1898, 2016 WL 324950, at *7 (D.N.J. Jan. 27, 2016).  The only distinguishing feature Defendant references in its Motion is that one of the Products contains additional protein, but this is insufficient to meaningfully distinguish the Products for standing purposes

when they carry the same title and same marketing claims that are at issue in the case.

Even at the class certification stage, the Third Circuit has ruled that in the context of class actions, it is the product claims at issue that allows a class representative standing to represent purchasers of other products that contain the same claims: "When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types." *Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 599 (3d Cir. 2012). While Defendant relies on a couple of New Jersey District Court cases taking the view that class representative plaintiffs may not have standing over products they did not purchase, the prevailing view in class litigation is still predicated in the Third Circuit's ruling in *Haas v. Pittsburgh Nat. Bank*, 526 F.2d 1083 (3d Cir. 1975), which permitted a class plaintiff to pursue claims on behalf of other class members against the same defendant whose claims are "closely related." 526 F.2d. at 1088–89. Indeed, this approach has been favored in cases involving cases alleging deceptive marketing and labeling under the NJCFA. *In re Gerber Probiotic Sales Practices Litig.*, CIV.A. 12-835 JLL, 2014 WL 5092920, at *5-6 (D.N.J. Oct. 10, 2014); *In re L'Oreal Wrinkle Cream Mktg. and Sales Practices Litig.*, CIV. 2:12-03571 WJM, 2013 WL 6450701, at *4 (D.N.J. Dec. 9, 2013);

*Burke v. Weight Watchers Intern., Inc.*, 983 F. Supp. 2d 478, 482 (D.N.J. 2013); *Stewart v. Smart Balance, Inc.*, CIV.A. 11-6174 JLL, 2012 WL 4168584, at *15-16 (D.N.J. June 26, 2012).

Given that the Third Circuit has not revisited the *Haas* decision, the more reasoned view is to address this argument at class certification because even if Plaintiff Owen did not purchase each of the Products himself, "dismissal is inappropriate at this stage of the litigation because whether they may represent a class of plaintiffs who do have standing is not before the Court." *Id.*, at 16. Accordingly, the Court should deny Defendant's Motion on this basis and defer the issue to the class certification stage.

### D.     Plaintiff States a Claim For Breach of Warranty

#### 1.     The Products Are Unmerchantable Because They Do Not Control Glucose

"[T]he UCC, as adopted by New Jersey, specifically states that an implied warranty of merchantability ensures that goods sold are 'fit for the ordinary purposes for which such goods are used.'" *Avram v. Samsung Elecs. Am., Inc.,* No. CIV. 2:11-6973 KM, 2013 WL 3654090, at *13 (D.N.J. July 11, 2013) (quoting *Arlandson v. Hartz Mountain Corp.,* 792 F. Supp. 2d 691, 706 (D.N.J. 2011); N.J. Stat. Ann. § 12A:2–314(f)).  "Put a different way, merchantability is defined as the product sold should be of the general kind described and reasonably fit for the *general*

purpose for which it should have been sold." *Id.* (citations and internal quotations omitted) (emphasis in original).

Defendant argues that the ordinary purpose of the Products is a nutritional drink, and that Plaintiff does not allege otherwise. Mot. at 13-14. "An impairment of the 'ordinary purpose' of a product is one that is central to the product's value or function. *Avram*, 2013 WL 3654090 at *13 (*comparing Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J. Super. 441, 450, 240 A.2d 195, 200 (Law Div. 1968) (where the car the plaintiff purchased broke down less than a mile from the dealership, the car was "substantially defective" and in breach of the implied warranty of merchantability), *with Green v. Green Mountain Coffee Roasters, Inc.,* 279 F.R.D. 275, 283 (D.N.J. 2011) (rejecting implied warranty of merchantability claim that a single-cup brewing system, although it brewed beverages, failed to brew precisely one cup)). Here, Plaintiff alleges "Defendant's Products do not 'control glucose' or 'MANAGE BLOOD SUGAR,' and do not otherwise help 'PEOPLE WITH DIABETES' and thus render the Products unmerchantable and unfit for sale and use because they do not do what they were intended to do[.]" Compl. ¶ 66. The general purpose of the "glucose control" drinks is to control glucose, and plaintiff has alleged as much. )*Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 458 (D.N.J. 2012.

For this reason, Defendant's cases are inapposite. In *In re Gerber Probiotic Sales Pracs. Litig.*, 2014 WL 1310038, at *14 (D.N.J. Mar. 31, 2014), "[p]laintiffs

d[id] not dispute that the general purpose of the products was to function as infant food."  Here, Plaintiff has disputed Defendant's assertion that the general purpose of the Products is to provide nutrition.  Likewise, *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529 (D.N.J. 2011) is distinguishable.  There, "Plaintiff's argument that the general purpose of the Products was to function as a sleep aid, [but] neither the Complaint nor the attached documents show that the general purpose of the Baby Bath Products is anything other than to wash and moisturize." *Id.* at 543.  Here, Plaintiff has alleged that the Products are "specifically 'designed for people with diabetes' to 'help manage blood sugar.'  The Product name itself, Glucose Control, reaffirms its claimed purpose – to control glucose."  Compl. ¶ 1.  Thus, like *Miele,* the Court should find "that [by] accepting Plaintiff's allegations as true and reading Plaintiff's complaint in the light most favorable to h[im], Plaintiff has stated a claim for breach of implied warranty." *Miele USA, Inc.*, 849 F. Supp. 2d at 458.

### 2.    Plaintiff Has Satisfied the Notice Requirements for Breach of Warranty Claims

Plaintiff agrees that New Jersey has adopted the notice requirement provided by the Uniform Commercial Code ("UCC").  Indeed New Jersey Statutes § 12A:2-607(3)(a) provides that where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.  N.J. Stat. Ann. § 12A:2-607(3)(a).

Defendant interprets this mandate as to require Plaintiff provide pre-suit notice. Without such a notice, Defendant contends Plaintiff's warranty claims are barred. This argument misapprehends the law, Plaintiff's obligations thereunder, and fails for two independent reasons.  First, pre-suit notice in New Jersey is not required when the defendant is a remote seller.  Here, Plaintiff purchased the Boost Product directly from Amazon, making Nestle a quintessential remote seller under New Jersey law for whom notice is not required.  *In re Subaru Battery Drain Prods. Liab. Litig.*, Civ. No. 20-3095, 2021 WL 1207791, at *10 (D.N.J. Mar. 31, 2021) (recognizing the New Jersey law does not require pre-suit notice to a remote seller). Second, the notice requirement may be satisfied with the filing of a complaint.  The law requires only that notice be given within a reasonable time of discovery of the breach—which Plaintiff has done.

"Pre-suit notice is not required when the action is brought against a remote manufacturer and/or seller." *In re Volkswagen*, No. 16-2765 (JLL), 2017 WL 1902160, at *13 (D.N.J. May 8, 2017); *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *10; *Devane v. Church & Dwight Co.*, No. 3:19-cv-09899-BRM-LHG, 2020 WL 998946, at *7-8 (D.N.J. Feb. 28, 2020); *see also Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 876 (D.N.J. Nov. 24, 2020). Defendant is a Delaware corporation headquartered in New Jersey.  It manufactures the Products which it sells through numerous retailers, among them, Amazon, from

- 29 -

whom the Plaintiff purchased the Product.  Compl. ¶ 8.  On these facts, Defendant

is a remote seller.  *Hickman v. Subaru of Am., Inc.*, No. 1:21-cv-02100-NLH-AMD,

2022 WL 11021043, at *8 (D.N.J. Oct. 19, 2022); *Merkin v. Honda N. Am., Inc.*,

No. 17-cv-03625 (PGS)(DEA), 2017 WL 5309623, at *4 (D.N.J. Nov. 13, 2017).

Moreover, even if the Court were to find notice to Nestle is required, "the

filing of Plaintiff's Complaint satisfie[s] this requirement."  *Taylor v. JVC Ams.

Corp.*, No. 07-4059 (FSH), 2008 WL 2242451, at *6 (D.N.J. May 30, 2008).  The

holding of *Strzakowlski v. Gen. Motors Corp.*, No. CIV.A. 04-4740, 2005 WL

2001912 (D.N.J. Aug. 16, 2005) is instructive.  In *Strzakowlski,* GM argued that

permitting notice-by-suit would undermine the purpose of the UCC's notice

requirement by disallowing the seller an opportunity to cure an alleged breach

without the necessity for litigation.  *Id.*, at *4.  The Court found this argument

unpersuasive.  *Id.* (citing to Uniform Commercial Code § 2-607, Comment 4).  The

*Strzakowlski* court concluded that "the purpose of the notice requirement is simply

to spearhead settlement through negotiation. This, however, does not necessarily

mean that negotiation and simultaneous litigation are mutually exclusive.  Rather,

common pre-trial practices suggest that the opposite is true."  *Id.*; *see also*, *Chung v.

Igloo Prods. Corp.*, No. 20-CV-4926 (MKB), 2022 WL 2657350, at *13 (E.D.N.Y.

July 8, 2022).

Finally, whether the filing of a complaint constitutes a reasonable time under the notice provision, is a question for the factfinder, and not suitable on a motion to dismiss. *Cipollone v. Liggett Group, Inc.,* 683 F. Supp. 1487, 1498 (D.N.J. 1988) ("Alternatively, even if this provision required plaintiff to give notice to [defendant], plaintiff has presented evidence from which the jury could conclude that the filing of plaintiff's complaint constituted notice within a reasonable time."); *Gremo v. Bayer Corp.*, 469 F. Supp. 3d 240, 258 n.12 (D.N.J. 2020); *Coyle v. Hornell Brewing Co.*, No. 08-02797 (JBS), 2010 WL 2539386, at *6 (D.N.J. June 15, 2010); *In re Caterpillar, Inc. C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14–cv–3722 (JBS–JS), MDL No. 2540, 2015 WL 4591236, at *27-28 (D.N.J. July 29, 2015).[6]   Here, Plaintiff Owen purchased the Product in April 2022, and his suit was initiated a month later.   Under any measure, the timing of his notice would be reasonable.

### E.   Plaintiff Has Pleaded a Claim For Unjust Enrichment

"Generally, to claim unjust enrichment, a plaintiff must allege that "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would

---

[6] Defendant's reliance on *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 252 (3d Cir. 2010) is misplaced.   In *Cooper*, the plaintiff purchased a TV governed by a written warranty that required the consumer give notice within a year of purchase.   Plaintiff failed to give notice by any means, including the filing of a complaint within a year.   Defendant's reliance on *Scattaglia v. Mercedes-Benz USA, LLC*, No. 2:21-cv-12750 (BRM) (LDW), 2021 WL 5918475, at *11 (D.N.J. Dec. 15, 2021) is similarly misplaced. Like *Cooper*, the defendant manufacturer had a written warranty that expressly required any consumer provide direct written notification.

make it unjust for defendant to retain benefit without paying for it.'"  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civ. No. 03-4558, 2008 WL 4126264, at *21 (D.N.J. Sept. 2, 2008); *Iliadis v. Wal-Mart Stores, Inc*., 191 N.J. 88, 110, 922 A.2d 710 (2007) ("[t]o establish a claim for unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'").

Plaintiff properly alleges each factor necessary to assert a claim for unjust enrichment.  First, he purchased a 24-pack of BOOST Glucose Control in or around April 2022 from Amazon for $38.99.  Compl. ¶ 8.  Second, it is a reasonable inference that a substantial portion of the money from the sale of the Product ultimately benefitted Nestle.  Third, in light of the alleged misrepresentations on the Product label, it would be unjust for Nestle to retain the benefit.

Pleading in the alternative, especially at an early stage of the litigation is commonplace and allowed.  *Kancor Americas, Inc. v. Atc Ingredients, Inc.*, No. 14-4107, 2015 WL 1530740, at *3 (D.N.J. Apr. 6, 2015) (denying motion to dismiss an unjust enrichment claim despite a concurrent breach of contract claim because plaintiffs may plead alternative causes of action); *Simonson v. Hertz Corp.*, No. CIV.A. 1:10-CV-1585, 2011 WL 1205584, at *7 (D.N.J. Mar. 28, 2011) ("Plaintiff may plead alternative legal theories at the motion to dismiss stage."); *Rudel Corp. v.*

*Heartland Payment Sys.*, No. 16-2229, 2016 WL 4472944, at \*5 (D.N.J. Aug. 23, 2016); *see also* Fed. R. Civ. P. 8(d)(2) (allowing parties to plead in the alternative).

### F.   Equitable Relief Is Appropriate

In order to have standing to seek injunctive relief, a plaintiff must show: (1) that he is under a threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will prevent or redress the injury. *Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. 167, 180-81 (2000). Defendant contends that injunctive relief is improper when: (1) an otherwise adequate remedy at law exists; and (2) where Plaintiff cannot show that he will suffer irreparable injury absent an injunction. Mot. at 15-16. Neither of these arguments have bearing on the case at bar.

First, while Plaintiff does seek remuneration in the form of damages, he also seeks a cessation of the unlawful practices alleged in the Complaint – namely the improper labeling of the Products that claims to "manage blood sugar" or "control glucose," when it does not. Defendant continues to make these claims. Accordingly, any monetary remuneration resulting from this suit would not result in the cessation of this practice.

Second, because the mislabeling continues to date, the threat of future harm remains actual and imminent.  In the context of product labeling, courts routinely recognize that where the complained of wrongdoing is on-going, injunctive relief is appropriate.  *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 543 (E.D.N.Y. 2017); *Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2022 WL 344966, at *11 (N.D. Cal. Feb. 4, 2022).  The Ninth Circuit considered whether a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  In *Davidson*, the court recognized that district courts were divided on the issue, and resolved the judicial split in favor of plaintiffs seeking injunctive relief, holding "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.  *Davidson*, 889 F.3d at 969.  The same holds true here.  Plaintiff Owen remains interested in purchasing products that allow him to "manage his blood sugar" and therefore he continues to face the same injury in deciding whether or not to purchase the Products in the future.

- 34 -

The Third Circuit has embraced the same legal reasoning recognizing, and held "the threat of injury must be sufficiently real and immediate, and, as a result of the immediacy requirement, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects[.]" *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (internal citations and quotations omitted). Although the *McNair* court determined that injunctive relief was not warranted because the plaintiffs were no longer customers, it recognized that "Appellants would have been able to represent an injunctive relief class if they had maintained their subscriptions until after moving for class certification." *Id.* at 226. One factor that distinguishes *McNair* and strongly favors injunctive relief in this case is that Plaintiff alleges that Defendant's marketing and advertising runs afoul of the FDCA and continues to make unapproved health claims. Compl. ¶¶ 18-23.

The remaining prongs of an injunctive relief claim are easily satisfied as there is a clear causal relationship between Defendant's false and misleading labels and Plaintiff's and the public's ongoing injuries, as discussed above, which can be redressed by requiring Defendant to stop its false and deceptive claims.

### G.   Leave To Amend Should Be Freely Given

Under Federal Rule 15(a), leave to amend is to be "freely give[n] [] when justice so requires." *Garten v. Intamin Amusement Rides Int. Corp. Est,*

No. CV1920040FLWZNQ, 2020 WL 13156300, at *1 (D.N.J. Sept. 1, 2020).

Defendant's singular argument to obviate this well settled rule is based on their false

narrative that Plaintiff's complaint alleges that Plaintiff believed the Products could

treat or prevent diabetes. This argument, however, is thoroughly debunked above

and further belied by the plain language of the Complaint.  The fact remains that this

is Plaintiff's initial Complaint and to the extent the Court finds any deficiencies in

the pleadings, they are curable and leave to amend is appropriate. [7]

## IV.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny

Defendant's Motion.  To the extent the Court grants any portion of Defendant's

Motion, Plaintiff requests leave to amend.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED:  November 7, 2022          By:   /s/ *Joel B. Strauss*
                                                     Joel B. Strauss

                                                 850 Third Avenue
                                                 New York, NY 10022
                                                 Tel. 212-687-1980

---

[7] To the extent Plaintiff's claims for injunctive or declaratory relief are in any way deficient, Plaintiff seeks leave to amend.  *Greek v. Diet Works, LLC*, Civil Action No. 17-4738, 2018 WL 1905803, at *5 (D.N.J. Apr. 23, 2018) (granting leave to amend injunctive relief that is cognizable under applicable law); *Palmieri v. Intervet Inc.*, Civil Action No. 19-cv-22024, 2021 WL 2205854, at *19 (D.N.J. June 1, 2021) (dismissal of injunctive relief without prejudice).

Email: *jstrauss@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
William J. Pinilis
160 Morris Street
Morristown, NJ 07960
Tel. 973-656-0222
Email: *wpinilis@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King*
Matthew B. George*
Blair E. Reed*
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Tel. 415-772-4700
Email: *lking@kaplanfox.com*
        *mgeorge@kaplanfox.com*
        *breed@kaplanfox.com*

**KUZYK LAW, LLP**
Michael D. Braun*
1999 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067
Tel. 213-401-4100
Email: *mdb@kuzykclassactions.com*

**THE ROTHENBERG LAW FIRM LLP**
Ross B. Rothenberg
450 7th Avenue, 44th Floor
New York, NY 10123
Tel. 212-563-0100
Email: *ross@injurylawyer.com*

*Attorneys for Plaintiff Steven Owen and the Proposed Class*

*Admitted pro hac vice*